## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONTARIE M. STALLINGS, as the
Administrator of the Estate of Terrell Stallings,
Deceased, and RHONDA WOODS,
Individually,

      Plaintiffs,

vs.

MICHELIN CORPORATION, a Corporation;
MICHELIN NORTH AMERICA, INC. a
Corporation; MICHELIN AMERICAS
RESEARCH & DEVELOPMENT
CORPORATION, a Corporation; ISUZU
MOTORS AMERICA, INC., a Corporation; et
al.,

      Defendants.

CIVIL ACTION FILE

NO. 1:07-cv-2497-RWS

## DEFENDANTS MICHELIN CORPORATION AND
## MICHELIN NORTH AMERICA, INC.'S FED. R. CIV. P. 26(a)(2)
## <u>DISCLOSURE OF EXPERT TESTIMONY</u>

      COMES NOW Defendants Michelin Corporation and Michelin North

America, Inc. ("MNA") (collectively referred to as "Michelin"), by and

through their undersigned counsel, and hereby file Michelin's Disclosure of

Expert Testimony, pursuant to this Court's August 6, 2008 Amended

Scheduling Order, and Fed. R. Civ. P. 26(a)(2).   Michelin hereby provides

notice that Michelin may call the following expert witnesses to testify at the trial of this case:

1.  Joseph L. Grant, 4201 Moss Creek Court, Matthews, North Carolina 28105.

Mr. Grant is expected to testify that the subject tire was not defective, including in design and manufacture.  He is also expected to address the cause of the tire disablement and the controllability of the subject vehicle after the disablement.  Mr. Grant's curriculum vitae, fee schedule, disclosure of publications authored by him during the past ten (10) years, and disclosure of lawsuits in which he has testified as an expert at trial or by deposition in the last four (4) years is attached hereto as Exhibit "A" bearing Bates Nos. MNA 01319 through MNA 01324.  The report prepared and signed by Mr. Grant containing a statement of opinions to be expressed by him at trial, the basis and reasons for those opinions, the data or other information considered by him in forming his opinions in this case, and exhibits to be used as a summary of, or support for, Mr. Grant's opinions is

attached hereto as Exhibit "B" bearing Bates Nos. MNA 01325 through MNA 01337.

Mr. Grant's opinions and the basis for those opinions may be explored further at a deposition.

      2.     <u>Kevin Schmidt, c/o Robert Monyak, counsel for MNA.</u>

Mr. Kevin Schmidt is not a retained outside expert and does not otherwise qualify as an expert who is required to produce a report pursuant to Fed. R. Civ. P. 26(a)(2)(B). Michelin identifies Mr. Kevin Schmidt as a Michelin employee with technical knowledge and experience who may be called to testify regarding the following subject areas: tire components and nomenclature; tire manufacturing generally; manufacturing and quality assurance processes in place at MNA's plant in Opelika, Alabama where the subject tire was manufactured by MNA during the 32nd week of 1996; MNA's Opelika, Alabama manufacturing plant generally; industry standards and practices regarding tire manufacturing; and MNA generally. Mr. Kevin Schmidt's opinions and the basis for those opinions may be explored further at a deposition.

3.    <u>Len Kopka, c/o Robert Monyak, counsel for MNA</u>.

Mr. Len Kopka is not a retained outside expert and does not otherwise qualify as an expert who is required to produce a report pursuant to Fed. R. Civ. P. 26(a)(2)(B).  However, he is identified as a Michelin employee with technical knowledge and experience regarding the following subject areas: tire components and nomenclature; tire design generally; the developmental design process; monitoring of tire quality and performance; industry standards and practices regarding tire design; and MNA[1].  Mr. Len Kopka is also expected to testify that the subject tire's design was not defective.  Mr. Len Kopka's opinions and the basis for those opinions may be explored further at a deposition.

Michelin reserves the right to supplement its expert disclosures or Mr. Grant's report produced herein as additional information is obtained. Michelin specifically reserves the right to supplement its expert disclosures and Mr. Grant's report after Michelin has had an opportunity to depose

---

[1] Effective January 1, 2008, Michelin North America, Inc. and Michelin Americas Research & Development Corp. ("MARC") merged, with the surviving entity being Michelin North America, Inc. As of January 1, 2008, MARC is a division of MNA operating under the name "Michelin Americas Research Company."

plaintiffs' rebuttal witness(es), if any, after Michelin and Michelin's expert witnesses have an opportunity to examine and inspect the subject rim that was mounted on the subject vehicle at the time of the accident, and after Michelin has obtained additional documentation or information pertaining to the purchase, service, or repairs to the subject vehicle, subject tires/rims, and companion tires/rims (including the spare tire).

Michelin reserves the right to name additional expert witnesses (e.g. economist, seat belt usage, and/or accident reconstructionist experts), pursuant to Fed. R. Civ. P. 26(a)(2).

Michelin further reserves the right to name additional expert witnesses for purposes of rebuttal, if necessary, to any expert witness to be identified by plaintiffs or in the event additional issues arise in this matter necessitating expert testimony.

Respectfully submitted this 31st day of October, 2008.

/s/ Angela M. Hinds
Robert P. Monyak
Georgia Bar No. 517675
Angela M. Hinds Esq.
Georgia Bar No. 335751

5

PETERS & MONYAK, LLP
950 East Paces Ferry Road, N.E.,
Suite 2275
Atlanta, Georgia 30326
Telephone:  (404) 607-0100
Facsimile:   (404) 607-0465

Attorneys for Defendants Michelin
Corporation and Michelin North
America, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, a true and correct copy of the foregoing DEFENDANTS MICHELIN CORPORATION AND MICHELIN NORTH AMERICA, INC.'S FED. R. CIV. P. 26(a)(2) DISCLOSURE OF EXPERT TESTIMONY was filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court and served upon all counsel of record via facsimile transmission, addressed to:

Kendall C. Dunson, Esq.
Beasley, Allen, Crow, Methvin,
   Portis & Miles, P.C.
P.O. Box 4160
Montgomery, AL 36103
Fax:  334-954-7555
Kendall.dunson@beasleyallen.com
*Attorney for Plaintiffs*

J. Benjamin Finley, Esq.
Lara P. Percifield, Esq.
The Finley Firm
2931 North Druid Hills Road, Suite A
Atlanta, GA 30329
Fax: 404-320-9978
bfinley@thefinleyfirm.com
lpercifield@finbuck.com
   *Attorneys for Plaintiffs*

This 31st day of October, 2008.

/s/ Angela M. Hinds
_____
Robert P. Monyak
Georgia Bar No. 517675
Angela M. Hinds Esq.
Georgia Bar No. 335751

PETERS & MONYAK LLP
950 East Paces Ferry Road, N.E.
One Atlanta Plaza, Ste. 2275
Atlanta, Georgia 30306
(404) 607-0100
(404) 607-0465

Attorneys for Defendants Michelin
Corporation and Michelin North
America, Inc.



EXHIBIT

A

## _CURRICULUM VITAE OF_
## _JOSEPH L. GRANT_

| | |
|---|---|
| **_PRESENT EMPLOYMENT:_** | Independent Tire Analyst |
| **_HOME ADDRESS:_** | 4201 Moss Creek Court<br>Matthews, North Carolina 28105<br>Phone 704 617 0336 |
| **_EDUCATION:_** | Bachelor of Science in Mechanical Engineering – June, 1971<br>Fenn College of Engineering, Cleveland State University |

**_COURSES & SEMINARS:_**

- Tire Society Symposium
- Akron Rubber Group
- Clemson University Tire Industry Conference (October, 1985 and 1986)
- Monsanto Rubber Technology Seminar (May, 1989)
- SAE Motor Vehicle Accident Reconstruction and Cause Analysis (March, 1993)
- International Tire Exposition and Conference
- Northwestern University Traffic Institute Accident Investigation (March, 1997)
- STL Trans Tech Tire Technology Seminar – 1999

**_PROFESSIONAL ORGANIZATIONS:_**

- Society of Automotive Engineers
- Akron Rubber Group
- Rubber Manufacturers' Association
  Chairman - Truck Bus Tire
  Engineering Committee (1986-1992)
- Tire & Rim Association
- The Maintenance Council of the American Trucking Association
- American Society of Mechanical Engineers
- Tire Industry Association
- American Chemical Society

**_PUBLICATIONS:_**

_"What makes a High Performance Tire Different than a Regular Tire"_
Jan. 1986 - Akron Rubber Group
Oct. 1986 - Clemson University Tire Industry Conference
April 1987 - American Retreading Association

_"Rim Line Grooves as an Indicator of Underinflated or Overloaded Tire Operation in Radial Tires"_
September 2004 - ITEC

**_PATENTS:_**  Method of Forming Belted Radial Tires from a Cylindrical Tire Band (1977)

**_EMPLOYMENT:_**   · June 1971 – Dec. 1994    The General Tire & Rubber Company

Stallings v. MNA
MNA 01319

## *CURRICULUM VITAE OF*
## *JOSEPH L. GRANT*

| | |
|---|---|
| · Jan., 1995 – April 2000 | Continental General Tire, Inc. |
| · May 2000 – Dec. 2005 | Continental Tire, North America, Inc. |
| · Jan. 2006 – Present | Independent Tire Analyst |

## *POSITIONS:*

• June, 1971 — Engineering Trainee, Tire Technology Department, Akron Tire Manufacturing Plant (Akron, Ohio).

• October, 1972 — Project Engineer, Advanced Tire Development.
Responsible for the Development of Advanced Concept Tire Products, including Fiberglass Belted Radial Passenger Tires and Advanced Bias Truck Tires (Akron, Ohio).

• October, 1978 — Manager, Bias Passenger Car Tire Engineering Technology.
Responsible for the Engineering Development Group for Bias Passenger Tires (Akron, Ohio)

• April, 1980 — Manager, Replacement and Private Brand Passenger Car Tire Engineering Technology.
Responsible for the Engineering Development Group for Bias and Radial Passenger Tires (Akron, Ohio).

• March, 1987 — Section Manager, Radial Truck Tire Engineering.
Responsible for the Engineering (Construction and Mold Design) Development Group for Radial Truck Tires (Akron, Ohio).

• September, 1988 — Director, Commercial Tire Technology.
Responsible for the Engineering (Construction and Mold Design) and Compound Development Groups for Commercial Products, including Bias and Radial Medium and Heavy Service Truck Tires and Giant, Farm and Industrial Tires (Akron, Ohio, September 1988 - March 1992) (Mt. Vernon, Illinois, April 1992 - December 1992).

• January, 1993 — Director, Product Analysis.
Responsible as company-wide consultant to assist other Departments on the subject of Tire Failure Analysis, Tire Performance Standards, and Safety Literature (Akron, Ohio, January 1993 - October, 1995) (Charlotte, North Carolina, November 1995 – January 2006).

• January, 2006 — Independent Tire Analyst

Stallings v. MNA
MNA 01320

## JOSEPH L. GRANT
## DEPOSITION AND TRIAL LIST

| NAME | TRIAL | DEPO | LOCATION |
|---|---|---|---|
| Akin | N/A | 04 | New York, New York |
| Aldrich | N/A | 04 | Charlotte, NC |
| Ball, Cindy Lou | N/A | 08 | Akron, Ohio |
| Barcenas | N/A | 04 | Chicago, Illinois |
| Bell, Paul | N/A | 08 | Columbia, SC |
| Bivins | N/A | 05 | Dallas, Texas |
| Bloomer, Debra | N/A | 07 | Akron, Ohio |
| Boles | 07 (2) | 06 | Greenville, SC<br>Columbia, SC |
| Boren | N/A | 04 | Charlotte, NC |
| Boudreaux | 07 | N/A | Baton Rouge, LA |
| Bradley | N/A | 07 | Charlotte, NC |
| Brown, Anita | N/A | 08 | Akron, Ohio |
| Chasteen | N/A | 07 | St. Louis, MO |
| Choi | N/A | 07 | Oakland, CA |
| Cleminson | N/A | 08 | Akron, Ohio |
| Contreras | N/A | 06 | Akron, Ohio |
| Cooper | N/A | 05 | Los Angeles, CA |
| Carlos | N/A | 06 | Charlotte, NC |
| Cunningham | 07 | 05 | Greenville, SC<br>Jackson, Tenn. |
| Crane | N/A | 04 | San Francisco, CAL. |
| Crause, Bonnie | N/A | 08 | Akron, Ohio |
| Cruz, Carlos | N/A | 08 | Akron, Ohio |
| Cruz, Catalina | N/A | 06 | Charlotte, NC |
| De Garcia | N/A | 08 | Austin, Texas |
| De LaVina | N/A | 04 | Charlotte, NC |
| DeZerpa | N/A | 04 | Charlotte, NC |
| Diaz | N/A | 06 | Dallas, TX |
| Dillard | N/A | 08 | Charlotte, NC |
| Elbayoumy | 06 | 06 | Kansas City, MO<br>Charlotte, NC |
| Enriquez, Michael | N/A | 08 | Akron, Ohio |
| Esperquerta | N/A | 05 & 06 | Los Angeles, CAL |
| Easterling | N/A | 07 | Akron, Ohio |
| Fullerton | N/A | 06 | Akron, OH |
| Groessl, Laura | N/A | 04 | Charlotte, NC |
| Guzman | N/A | 07 | Charlotte, NC |
| Hale, Eula | N/A | 04 | Charlotte, NC |
| Haley | N/A | 08 | Charlotte, NC |
| Hardnett | N/A | 08 | Charlotte, NC |
| Harris, Charles | N/A | 06 | Akron, OH |
| Harth | N/A | 05 | Charlotte, NC |
| Hartman | N/A | 06 | Greenville, SC |
| Hernandez | 06 | 04<br>05 | Marfa, Texas<br>Charlotte, NC<br>Houston, Texas |
| Hill | N/A | 06 | Los Angeles, CAL. |
| Hughes | N/A | 08 | Charlotte, NC |

Stallings v. MNA
MNA 01321

| NAME | TRIAL | DEPO | LOCATION |
|---|---|---|---|
| Irwin | N/A | 08 | Jacksonville, Florida |
| Janssen | N/A | 06 | Charlotte, NC |
| Joyner | N/A | 08 | Greenville, SC |
| Kadre | N/A | 06 | Los Angeles, CAL |
| Lawrence | N/A | 05 | Akron, OH |
| Loe / Hamby | N/A | 08 | Akron, OH |
| Lopez, V. | N/A | 07 | Houston, TX |
| Lopez, Verduzco | N/A | 08 | Charlotte, NC |
| Lopez, Anita Romero | N/A | 07 | Akron, OH |
| Lucero | N/A | 05 | Charlotte, NC<br>Los Angeles, CAL. |
| Lugo | N/A | 05 | Austin, TX |
| McCaskill | 05 | N/A | Greenwood, Miss. |
| McFadden | N/A | 06 | West Palm Beach, FL |
| Means | N/A | 05 | Akron, Ohio |
| Mascarenas | N/A | 08 | Charlotte, NC |
| Moise | N/A | 07 | Akron, Ohio |
| Moore, Bertha | N/A | 04 | Akron, Ohio |
| Morales | N/A | 08 | Charlotte, NC |
| Pantuso / Jones | N/A | 04 | Charlotte, NC |
| Pesina | N/A | 06 | Austin, TX |
| Piard | N/A | 07 | Philadelphia, PA |
| Piechowiak | N/A | 07 | Greenville, SC |
| Pierson | N/A | 07 | Charlotte, NC |
| Pitts | N/A | 06 | Oakland, CAL. |
| Price | N/A | 08 | Akron, Ohio |
| Ramirez v. Enterprise | N/A | 04 | Houston, TX |
| Resende | N/A | 08 | Los Angeles, CAL. |
| Reyes | N/A | 07 | Charlotte, NC |
| Rocco | N/A | 06 | Los Angeles, CAL. |
| Rodriguez, Martha | N/A | 04 | Akron, OH |
| Rodriguez, Robertina | N/A | 04 | Akron, OH |
| Rosenthal | N/A | 05 | Akron, OH |
| Ruiz | N/A | 06 | Akron, OH |
| Russell | N/A | 07 | Houston, TX |
| Ryvkin | | 06 | Akron, OH |
| | 06 | 06 | Los Angeles, CA |
| | 08 | | Los Angeles, CA |
| Sanchez | N/A | 04 | Charlotte, NC |
| Satterwhite | N/A | 06 | Orlando, FL |
| Schifo | N/A | 04 | Charlotte, NC |
| Sherwood | N/A | 08 | Charlotte, NC |
| Smith, Eric | N/A | 05 | Charlotte, NC |
| Sullivan | N/A | 08 | Charlotte, NC |
| Taylor, Robert | 04 | | Miami, FL |
| | | 04 | Charlotte, NC |
| Telusme | 08 | 08 | Charlotte, NC |
| Thompson, Paul | N/A | 07 | Akron, OH |
| Townsel | N/A | 06 | Akron, OH |
| Underwood | N/A | 06 | Akron, OH |
| Valera | N/A | 04 | Coral Gables, FL |
| Vaquero | N/A | 06 | Los Angeles, CAL. |

**Stallings v. MNA**
**MNA 01322**

| NAME | TRIAL | DEPO | LOCATION |
|---|---|---|---|
| Vaughan | 05 | | Ocala, Florida |
| | | 04 | Charlotte, NC |
| Vasquez | N/A | 04 | Los Angeles, CAL. |
| Vigil | N/A | 06 | Austin, TX |
| Wakehouse | N/A | 07 | Charlotte, NC |
| Walsh | N/A | 04&05 | Charlotte, NC |
| Walton | N/A | 08 | Akron, Ohio |
| Ward-Lowery | N/A | 06 | Akron, Ohio |
| Werner | N/A | 07 | Akron, Ohio |
| Wiest | N/A | 05 | Akron, OH |
| Wiles | N/A | 05 | Austin, TX |
| Wilkinson | N/A | 08 | Charlotte, NC |
| Williams, Ema | 04 | 04 | Pittsburgh, PA |
| Woods | N/A | 08 | Charlotte, NC |
| York | N/A | 08 | Tucson, AZ |
| Zamora | N/A | 07 | Charlotte, NC |
| Zuniga | N/A | 08 | Austin, Texas |

Stallings v. MNA
MNA 01323

## JOSEPH L. GRANT
4201 Moss Creek Court
Matthews, North Carolina 28105
(704) 617-0336

Fee Schedule

| | |
|---|---|
| Hourly Rate | $ 250.00 |
| Travel Fee (per hour) | $ 250.00 |
| Travel Expenses | Cost |

Travel Expenses
    Hotel,
    Air Travel (least expensive)
    Rental Car or Taxi (least expensive)
    Personal Car ($.505/mile)

Travel time is portal to portal.  Invoices are submitted at the conclusion of each significant segment of the work as the case progresses.

TAX I.D. 282 40 6143                                January 1, 2008

Stallings v. MNA
MNA 01324



EXHIBIT
B

# JOSEPH L. GRANT
## 4201 MOSS CREEK COURT
## MATTHEWS, NORTH CAROLINA 28105
## PHONE 704 617 0336

October 25, 2008

Mr. Robert Monyak
Peters & Monyak, LLP
One Atlanta Plaza, Suite 2275
950 East Paces Ferry Road NE
Atlanta, GA 30326

Re: *Dontarie M. Stallings v. Michelin North America, Inc., et al*

Dear Mr. Monyak:

I am an independent tire consultant and failure analyst of tires.  I have a Bachelor of Science Degree in Mechanical Engineering from Fenn College of Engineering at Cleveland State University and graduated in 1971.  I was employed as a tire engineer for more than 34 years by Continental Tire North America, Inc. previously known as The General Tire & Rubber Company and Continental General Tire, Inc.  As such, I had responsibilities for the design, development, testing and the forensic analysis of tires.  These responsibilities included design, development and testing of tires to ensure they complied with the performance requirements of the Department of Transportation and Continental Tire as well as various vehicle manufacturers.

I am also a member of the Society of Automotive Engineers, the American Chemical Society and the American Society of Mechanical Engineers and I have represented Continental Tire at the Rubber Manufacturers Association and Tire and Rim Association.

I have been engaged as an independent consultant in the field of tire failure analysis for approximately ten (10) years for a wide variety of clients.  In this regard, I have presented expert opinion testimony in cases in both federal and state courts throughout the United States.  I have qualified as an expert in the field of tire failure analysis in both

1

State and Federal Courts in California, Texas, Arizona, Florida, Maryland, North Carolina, South Carolina, Mississippi, Missouri, Georgia, Nebraska, Idaho, New York, Pennsylvania, Tennessee, Louisiana and Illinois. I have never been found to be unqualified as an expert in the field of tire failure analysis by any court.

I personally examined in Spartanburg, South Carolina the subject tire on June 6, 2006 which has been represented to be from the vehicle involved in the above referenced case. On June 6, 2008, I also examined the three companion tires and wheels and on August 27, 2008, I examined the spare tire and wheel. I have also reviewed the case specific materials sent to me to date. Although requested, I have not received the subject wheel for inspection.

I am submitting this report pertaining to my findings, opinions and conclusions from my forensic examination of the tire represented to be from the subject accident vehicle and review of the materials provided to date.

A.     BACKGROUND

According to the Georgia Motor Vehicle Accident Report, a single vehicle rollover accident occurred at 2:06 PM on September 10, 2005 on I-185 southbound, 1.0 miles north of Exit 46 (I-85) in Troup County, Georgia. A 1995 Isuzu Rodeo (VIN 4S2CK58E1S4377196) with 2005 Georgia license plate APY9213 was being driven by Terrell Alan Stallings in the right lane of traffic when the left rear tire experienced a tread and top steel belt detachment. The vehicle traveled into the left lane and then steered back into the right lane. The driver then overcorrected back to the left. The vehicle began to yaw before overturning several times. The vehicle came to rest upright off the east shoulder, facing north. Rhonda Woods was an occupant in the vehicle at the time of the accident. The posted speed limit at the time of the accident was 70 miles per hour.

B.     DISCUSSION

A steel belted radial tire is a complex, laminate structure, typically containing twenty or more different components and a dozen or more different compounds. Steel belted radial tires are designed to carry vehicle loads in a particular application under a wide variety of operating conditions. The performance and durability of any steel belted radial tire is dependent on the service conditions that the tire is exposed to in its use or application throughout the life of the tire. Additionally, the compounds and materials used in steel belted radial tires are designed to resist the typical operating temperatures created by the tire's in-service use. Because of its complex nature, a steel belted radial tire can fail due to a wide variety of severe or abusive service related factors. Just because a tire fails or loses air does not mean a tire is defective.

2

It is widely recognized within the tire industry that tread/belt separations and/or detachments result from a wide variety of service related conditions such as overdeflection (overloading, underinflation or a combination of both), unrepaired and improperly repaired punctures or injuries, wear into the belt structure, impact damage, road hazards, mounting damage, high speed operation, vehicle conditions like misalignment, improper storage, and other types of service damage or abuse. Each of these service conditions normally changes the physical condition of the tire or otherwise leaves evidence of the underlying cause of the tread/belt separation. Overdeflected operation, for example, usually creates a noticeable compression groove in the bead area of the tire. It also may affect the nature of the tire's tread wear, and in extreme cases, discolor, abrade or even crack various components within the tire.

It is not unusual for a tire or tires to become damaged and/or lose air and become flat during an accident sequence. Tires get cut, punctured, impacted, abraded and even ripped and torn apart from the surfaces and objects that they come into contact with during an accident sequence. A tire that looks like a tire blow out may actually have that appearance as a result of hitting a guard rail, for example, causing the tire to be cut and blow out. The tread and/or shoulder area of the tire can also get snagged on a bent piece of sheet metal during the accident sequence; ripping off a portion or all of the tread and belts and thus looking very much, from even a short distance away, like a tread/belt separation. Tires also lose air, as an example, when dirt and roadside debris gets lodged between a wheel flange and a tire during a sideways slide off road. A tire can also become unseated from the wheel flange and at times even be totally ripped off a wheel. As a last example, a tire that loses air during an accident sequence and then continues rotating or not rotating along the ground can experience very extensive run flat damage.

As a result, it is widely recognized within the tire industry that a physical examination of the tire is almost always necessary to determine the underlying cause of any tire disablement. Without a detailed forensic examination of the tire, it is rarely possible to reach an opinion or conclusion as to the cause of a tire disablement with any reasonable degree of engineering certainty.

C.     EXAMINATION

The subject tire was identified by information molded on the sidewalls as follows:

BFGOODRICH EXCENTIA A/S
P225/75R15 M+S
STANDARD LOAD
MAXIMUM LOAD: 1874 LBS @ 35 PSI

3

TREAD: 4 PLY, 2 PLY POLYESTER & 2 PLY STEEL
SIDEWALL: 2 PLY POLYESTER
UTQG 360 A B
DOT NUMBER: ANHHWH11326

The DOT number indicates that the subject tire was manufactured at the UNIROYAL GOODRICH Opelika, Alabama tire manufacturing facility during the 32nd week of 1996.

The wheel was not available for examination.

During my examination of the subject tire, I took four pages of examination notes as well as eighty-six (86) digital photographs.

My examination of the subject tire revealed that the tire experienced a 360 degree detachment of the tread and top steel belt.  The detached tread and top steel belt is missing.

Using a clock face as an approximate locating reference system with the DOT serial number at 12:00, there is a region of abrasion at 12:00 where the bottom steel belt cords are bent, loose and broken.  The region of damage extends through the innerliner.

At 3:30 on the opposite serial side there is one loose steel filament.  Additionally there are various other opposite serial side locations where the bottom steel belt edge cords and filaments are loose.

At 6:00 and 7:15, there are regions on the opposite serial side where the steel belt cords are bent, loose and broken.

At 8:15, the bottom steel belt and carcass is cut and broken through extending from the opposite serial side tread shoulder at 8:15 to the crown region at 8:45 and then following the path of the bottom steel belt where the carcass cords and innerliner are broken.   The break extends to 10:00 on the serial side shoulder and then circumferentially along the serial side tread shoulder to 10:45.

There is a localized region of separation and polishing on the serial side from 9:00 to 11:00 extending to the crown region at 10:00.

Radial rubber multi-level tear lines on top of the bottom steel belt edge between the steel belts are present on the serial side from 9:00 to 12:00 and on the opposite serial side from 8:00 to 12:00.

4

Stallings v. MNA
MNA 01328

At 9:30 there is a 0.4 inch long deep cut/gouge into the bottom steel belt on the serial side of the crown with no abrasion or damage surrounding the cut/gouge. The cut/gouge is in the region of the localized separation and polishing.

Multi-level tear is present on all other exposed detached surfaces.

There are portions of the tread shoulder elements still remaining on the tire in various areas 360 degrees. Cracking is present on the tread shoulder ribs remaining on the tire. The average remaining serial side tread shoulder slot depth is 6/32nds of an inch. The tread hardness as measured is 85 Shore A.

On the serial side sidewall there is abrasion in the 12:00 upper sidewall region and cuts into the sidewall rubber at 5:00 and 7:30.

On the serial side rim line region, there are two wheel weight impressions at 8:15 and 8:45 that are each one inch wide. There is a bead toe tear at 9:45 that extends down to a level where the polyester carcass cords are visible under the ply skim rubber.

On the opposite serial side sidewall there is an angled cut through the sidewall at 12:30 in the upper sidewall. There is a cut in the upper sidewall at 7:30 with a circumferential rupture in the mid-sidewall that extends from the cut back to 5:45. There is also a radial split at 8:15 with broken polyester carcass cords visible.

On the opposite serial side rim line region, there is a 0.6 inch wide wheel eight impression at 10:45. The bead is bent on the opposite serial side at 2:30, 7:30 and 11:30. There is also a cut on the bead heel at 6:15.

The innerliner splice is located at 4:00. The splice is overlapped and sound. There is a slight cosmetic crack at the leading edge of the overlap.

In the 8:45 to 10:45 shoulder and upper sidewall region of the innerliner on the opposite serial side there are a number of small approximately 0.25 inch long radial splits on the innerliner.

There are rim line compression grooves 360 degrees on both sides of the tire.

No manufacturing or design defects are present in the tire.

COMPANION TIRES AND WHEELS

The three companion tires available for examination on June 6, 2008 were identified as being from the right front (PF), the right rear (RR) and the left front (DF) positions on the

Stallings v. MNA
MNA 01329

vehicle. The spare companion tire was examined on August 27, 2008. The wheels were separate and similarly identified with the exception of the spare companion tire which was still mounted on its wheel. During my examinations of the four companion tires and wheels, I took three pages of examination notes as well as one hundred and two (102) digital photographs.

The four companion tires were identified by information molded on the sidewalls as follows:

ALLEGIANCE IV RADIAL AS
P235/75R15 105S M+S
STANDARD LOAD
MAXIMUM LOAD: 2028 LBS @ 35 PSI
TREAD: 4 PLY, 2 PLY POLYESTER & 2 PLY STEEL
SIDEWALL: 2 PLY POLYESTER
UTQG 320 A B
DOTS: CCBNVBE1102 (All Tires)


The DOT numbers indicate that the four companion tires were manufactured by Yokohama at the Salem, Virginia tire manufacturing facility during the 11th week of 2002.

RIGHT FRONT COMPANION (PF)

The average remaining tread groove depth on the right front companion tire is 2.5/32nds of an inch in the center two grooves. There is rounded tread shoulder wear with the opposite serial side tread shoulder worn smooth 360 degrees and into the base compound. The majority of the tread wear bars are exposed in tread grooves 2, 3 and 4. There is also cracking in the serial side tread shoulder groove 360 degrees and surface crazing on the tread with various locations where the tread is cracked open.

There is cracking on the serial side sidewall in various areas. There is also abrasion, permanent sidewall bends and a bead toe tear on the opposite serial side of the tire.

Rim line compression grooves are visible 360 degrees on each side of the tire. Abrasion marks are visible on the innerliner.

The right front wheel is a 15X6JJ size wheel with a Dill TR418 rubber snap in valve.

Stallings v. MNA
MNA 01330

### RIGHT REAR COMPANION (RR)

The average remaining tread groove depth on the right rear companion tire is 2/32nds of an inch. There is rounded tread shoulder wear with the opposite serial side tread shoulder worn smooth 360 degrees. The tread wear bars are exposed in tread grooves 2, 3 and 4. There is cracking in the serial side tread shoulder groove 360 degrees. A puncture is located at 1:30 in the center tread rib that does not go through the innerliner.

There is cracking on the serial side upper sidewall and off shoulder region 360 degrees. Abrasion is visible on the serial side off shoulder region 360 degrees.

Rim line compression groove is present 360 degrees on both sides of the tire.

The right rear wheel is a 15X6JJ size wheel with a Dill TR418 rubber snap in valve.

### LEFT FRONT COMPANION (DF)

The average remaining tread groove depth on the left front companion tire is 3/32nds of an inch. There is rounded tread shoulder wear with the opposite serial side tread shoulder worn smooth from 12:00 to 5:00 and the serial side tread shoulder groove worn smooth 360 degrees. A few of the tread wear bars are exposed in tread grooves 3 and 4. There is cracking in the serial side tread shoulder groove 360 degrees.

There is a permanent bend and cracking various locations on the opposite serial side sidewall and cracking is visible various areas 360 degrees in the serial side off shoulder region. There is also a large hole gouged/cut into the serial side sidewall at 12:00.

There are rim line compression grooves on both sides of the tire.

The left front wheel is a 15X6JJ size wheel.

### SPARE TIRE AND WHEEL

The spare companion tire was mounted serial side out. The beads were seated, the inflation pressure was at zero psi and the valve base was broken.

The average remaining tread groove depth on the spare companion tire is 1.5/32nds of an inch. The tread wear bars are exposed 360 degrees in all four tread grooves. Both tread shoulder ribs are worn smooth with rounded wear. The serial side (outboard on wheel) tread shoulder near or into the steel belt edge or nylon cap strips at various locations 360 degrees. Various areas the wear has exposed the underlying compound.

Stallings v. MNA
MNA 01331

There is also cracking on the tread ribs and in the tread grooves various areas 360 degrees.

The spare wheel is a 15X6JJ size wheel.

D.    CONCLUSIONS

Based upon my education, training, experience, and examination of the five tires and four wheels and a review of the materials provided to date, I have reached the following conclusions:

1)  The subject tire is not defective or unreasonably dangerous in design or manufacture.

2)  The subject tire experienced a 360 degrees detachment of the tread and top steel belt.  This condition alone does not mean the tire is defective.  Tread and steel belt(s) detachments occur for a variety of reasons unrelated to tire defects with the vast majority of tread and steel belt detachments (full and partial) occurring as a result of damage from service related conditions such as overdeflected operation, punctures, improperly repaired punctures and/or road hazard impacts/injuries.

3)  The subject tire experienced a 360 degree detachment of the tread and top steel belt as a result of a localized road hazard impact and overdeflected operation.

4)  The physical evidence on the subject tire that is consistent with a previous localized road hazard impact/injury include: a) the localized region of separation and polishing, b) the cut/gouge into the bottom steel belt in the localized region and c) the lack of any manufacturing or design anomalies in the localized region of the tire as well as anywhere else in the tire.   The recent 2005 NHTSA publication "The Pneumatic Tire", states that road hazard impacts are one of the most common initiators of tire failures.  The publication also states that if, when, and how the tire fails depends on the initial damage pattern and the type and severity of the subsequent operation.  The 2000 International Tire Exhibition and Conference Paper by Harold J. Herzlich titled "The Effect of Snaked Belt Anomalies on Tire Durability" states that the two most common initiators of belt related tire disablements are road hazard injuries to the belt package or other components and underinflation.  Additional recent articles on this subject are the 2005 paper by Standards Testing Labs, "Impact Simulations–What happens when a tire/wheel impacts a road hazard" and the STL paper "Structural Impact Damage Under Varying Laboratory Conditions" presented at the 2006 International Tire Exhibition and Conference.

Stallings v. MNA
MNA 01332

5) The rim flange compression grooves on both sides of the subject tire are physical evidence on the tire of overdeflected operation.

I gave a presentation at the September 2004 International Tire Exposition and Conference (ITEC) pertaining to rim line compression grooves. The title of the presentation was "Rim Line Compression Grooves as an Indication of Underinflated or Overloaded Tire Operation in Radial Tires". This conference is held every two years and is one of the premier seminars for presentations and peer review of scientific tire related research. My paper and others at the ITEC were presented to a broad spectrum of tire industry people, including tire engineers and tire chemists. The paper illustrates rim line compression grooves as a result of controlled evaluations. The paper also studied how overdeflected operation in combination with speed can increase the operating temperature of a tire especially at the belt edges.

Rim line compression grooves are an indication of the cumulative overdeflected operation history of a tire.

Overdeflected operation can be caused by overloading, underinflation or a combination of both. Overdeflected operation increases the operating temperature of the tire. Overdeflected operation, depending on the length of time and overall service conditions such as speeds to which the tire is subjected, can damage the tire, including degrading the physical properties of the rubber compounds and reducing a tire's resistance to separation especially at the belt edges and resistance to impact road hazard injuries.

6) The subject tire should not have been in service on the day of the accident. The region over the localized road hazard impact/injury would have appeared distorted and along with the cut/gouge in the tire in the same region would have alerted the person responsible for tire maintenance to take remedial action and remove the tire from service. An increase in vibration and noise from the subject tire should also have been apparent.

7) The companion tires should not have been in service on the day of the accident. The tires are worn out with tread wear bars exposed as well as large portions other tread shoulders worn smooth.

8) The spare tire is worn with the tread shoulders worn near or into the steel belt edge or nylon cap strips at various locations 360 degrees. Various areas the

Stallings v. MNA
MNA 01333

wear has exposed the underlying compound.  The spare tire should not be used as a spare.

9) Because the tread is missing over the road hazard impact injury location, it is not possible to determine the overall state of wear on the tire as well as any physical evidence left on the tread from the localized road hazard impact injury.

10) The multi–level tearing and rubber tear appearance of the exposed detached surfaces of the belt skim rubber is evidence that the overall adhesion level, fatigue resistance and physical properties such as rubber strength and tear strength of the belt skim compound were appropriate in the subject tire.

11) The subject tire is not defective because it did not have a nylon cap ply or cap strips.  Nylon cap plies or strips would not have prevented this tread and top steel belt detachment on the tire from occurring. Nylon cap plies or strips placed circumferentially (0 degrees) over the steel belts in radial tires do not offer sufficient stiffness and support to the steel belt edges to have an influence on the various stresses and strains that the belt edges must endure during its operational life.

Nylon cap plies or strips placed circumferentially (0 degrees) over the steel belts do not prevent belt edge separation and tread/belt detachment when a tire has been run overdeflected, damaged, improperly repaired or injured.  I have personally examined many tires with nylon cap plies or nylon strips that have experienced tread and top steel belt detachments.

Nylon cap plies and strips are used to increase high speed performance and are mainly used in speed rated tires.  I have reviewed many competitor radial tires over my career, all of which confirm this knowledge.

Nylon cap plies and strips mainly offer an advantage in restricting a speed rated high performance tire from growing due to centrifugal forces at high speeds and also delaying the formation of standing wave patterns.  This is because the nylon is placed in the tire in a circumferential direction and has low elongation properties.

I have given a presentation in October 1986 to The Tire Technology Conference at Clemson University in Greenville, South Carolina.  The title of the presentation was "What makes a High Performance Tire Different than a Regular Tire?"  This conference is held annually and is attended by a broad spectrum of tire industry people, including tire engineers and tire chemists.   This particular paper presentation was very well received and reflects the understanding of the tire

Stallings v. MNA
MNA 01334

industry in regard to the use of nylon cap plies and cap strips. This same presentation was also presented at the Akron Rubber Group in Akron, Ohio and at the American Retreaders Association's annual convention in Louisville, Kentucky.

In sum, nylon cap plies and strips are used as a method to increase high speed performance and reduce the formation of standing wave patterns and not as a method to stop or prevent belt edge separations and tread / belt(s) detachments from occurring.

12) There is no physical evidence of age or oxidative degradation in the subject tire. The tire failed in a localized area as a result of service conditions.

13) There are no trapped air anomalies in the subject tire that caused or contributed to the failure of the subject tire.

14) There is nothing unusual about the steel belts in the subject tire that would be of concern related to tire durability. I have examined the steel belt splices and steel belt wire conditions on large numbers of various manufacturers new and worn tires during my career. In my experience, the steel belts in the subject tire are in line with hundreds of millions of well manufactured radial tires produced in the United States over the years. The spacing of the steel cords, the splices, the centering and placement of the belts and the step offs of the splices are acceptable and did not cause or contribute to the failure of the tire. Recent technical papers that support this include: "Belt Misalignments and Belt/Belt Tear Patterns" ITEC 2002 and "The Effect of Snaked Belt Anomalies on Tire Durability" ITEC 2000 both by Harold J. Herzlich of Herzlich Consulting, Inc. The tire failed in a localized region from service related conditions.

15) I am familiar with the warnings and tire maintenance information generally provided by individual tire manufacturers and by the tire industry as a whole. The warnings and tire maintenance information provided by Uniroyal Goodrich are generally consistent with information provided in the tire industry and therefore are appropriate.

16) In my experience, the forces generated on a vehicle from a tire failure do not normally adversely affect the dynamics of the vehicle or cause loss of control. If a loss of control does occur, it is typically related to other factors. I have instrumented many vehicles during my career and measured the forces going into a vehicle during various types of tire disablements at highway speeds including tread and top steel belt detachments such as encountered in this accident. Also, according to the recent 2005 NHTSA publication "The Pneumatic

11

Tire", Chapter 15, the statistics indicate that only a fraction of the time, 0.06% to 0.50%, does an in-service tire failure end up with some type of crash.

This report is based upon a reasonable degree of engineering certainty, and on the materials presently available to me. I reserve the right to supplement or amend this report in light of newly-acquired information. I also intend to rebut any manufacturing or design defect opinions that may be presented by plaintiffs' expert(s).

I have enclosed a copy of my examination notes, a copy of my current CV which includes publications, a list of my deposition and trial testimony for the last four years, a list of case specific file materials and a list of general reference file materials. My hourly billing rate is currently $250 per hour as of January 1, 2008.

If you have any questions regarding my examination, please contact me.

Joseph L. Grant

12

Stallings v. MNA
MNA 01336

List of Case Specific Materials Reviewed as of October 25, 2008 By Joseph L. Grant in the *Dontarie M. Stallings v. Michelin North America, Inc., et al* matter.

1) Subject Tire;
2) Four Companion Tires and Wheels;
3) Report by Troy Cottles;
4) Deposition of Troy Cottles;
5) Summons, Complaint, Exhibit; 09/12/07;
6) MNA's Answer, Affirmative Defenses and Demand for Trial by Jury; 10/10/07
7) Isuzu's Answer (to Allegations of Jurisdiction and Venue); 10/12/07
8) MARC's Answer to Plaintiff's Complaint; 10/15/07
9) Plaintiff Stallings' Initial Disclosures; 11/09/07
10) Michelin Corp.'s First Interrogatories and First Request for Production of Documents to Plaintiffs; 11/27/07
11) Plaintiffs' Response to MNA's First Set of Interrogatories and Request for Production; 01/23/08
12) Plaintiffs' (Stallings' and Woods') Responses to Isuzu's First Set of Interrogatories and Request for Production; 12/17/07 (Attachments on CD)
13) Plaintiffs' Supplemental Responses to Isuzu's First Set of Interrogatories and Request for Production of Documents; 01/09/08 (Produced Documents were Tax Returns Only; Excluded from Expert Notebook);
14) Accident Report (MNA 00001 – 00003)
15) Trooper Accident Scene Photographs with CD (MNA 00004 – 00025)
16) Carfax (MNA 00157 – 00160)
17) Records from American Medical Response per MNA's Subpoena (MNA 00243 – 00257)
18) Records for 911 call from the Sheriff of Troup County per MNA's Subpoena (MNA 00276 – 00277)
19) Records from Troup County Fire Dept. per MNA's Subpoena (MNA 00365 – 00370)
20) Vehicle Maintenance Records from Isuzu;
21) Deposition of Rhonda Woods; February 4, 2008

1