**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DONTARIE STALLINGS, et al., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:07-CV-2497-RWS |
| MICHELIN AMERICAS : | |
| RESEARCH & DEVELOPMENT : | |
| CORPORATION, et al., : | |
| : | |
| Defendants. : | |

## **ORDER**

This case comes before the Court on Defendants' Motion to Exclude Opinions of Mr. Troy Cottles [74] ("Motion to Exclude"), Defendants' Motion for Partial Summary Judgment [75], Defendants' Motion for Oral Argument [80], Defendants' Motion to Compel Discovery Relating to Mr. Troy Cottles's "Compression Grooving Study" [89] ("Motion to Compel Study"), and Defendants' Motion to Compel Documents [91]. After reviewing the record, the Court enters the following order.

## **Background**

Plaintiffs summarize the facts of this action in this manner:

> [O]n September 10, 2005, Plaintiff Terrell Stallings

> was operating his 1995 Isuzu Rodeo. Plaintiff Rhonda
> Woods was a passenger and they were headed south
> on I-85 in Troup County, Georgia. While operating
> his vehicle, the driver side rear BF Goodrich Excentia
> A-S P225/75R15 tire [("subject tire"), manufactured
> by Defendant Michelin North America, Inc.
> ("MNA"),] de-treaded, resulting in a loss of control
> and subsequent rollover of the vehicle. At the time of
> the accident, both Terrell Stallings and Rhonda
> Woods were belted occupants. As a direct and
> proximate result of the tire disablement, Terrell
> Stallings was killed and Rhonda Woods severely
> injured.[1]

(Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment ("Plaintiffs' Response") Dkt. No. [97] at 1-2).

## Discussion

## I.  Defendants' Motion to Exclude [74]

Plaintiffs' retained Troy Cottles as a tire expert to offer opinions as to whether the subject tire was defective. (Plaintiffs' Response to Defendants' Motion to Exclude, Dkt. No. [96] ("Response to Motion to Exclude") at 1). Defendants seek to exclude as unreliable Mr. Cottles theories concerning a tire component called a "nylon cap ply," and his claims that the subject tire

---

[1] The use of Plaintiffs' summary of the facts is appropriate because in evaluating Defendants' Motion for Partial Summary Judgment [75], the Court "must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party." Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).

2

evidenced "rubber reversion." ((Defendants' Brief in Support of Motion to Exclude ("Brief for Motion to Exclude") Dkt. No. [74-2] at 2-3).

In summarizing his opinions, Mr. Cottles states in part, that:

> The tire exhibits belt skim that was incapable of resisting degradation from heat, oxygen, stress, and strain within the tire, as evidenced by the oxidative degradation of the rubber noted on the tire. This constitutes a defect in the subject tire.
> ...
> The lack of a nylon cap ply is a design defect in the subject tire absent other countermeasures to tread-belt separations, which are known to often lead to catastrophic crashes.

(Tire Failure Analysis Report, Dkt. No. [45-3] ("Expert Report") at 34). Defendants argue that Mr. Cottles fails to meet the threshold requirement set forth by the Supreme Court in Daubert v. Merril Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), to offer expert testimony in these two areas.

A.  Legal Standard

Federal Rule of Evidence 702 governs the admissibility of proposed expert evidence :

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

3

> education, may testify thereto in the form of an opinion or otherwise.

The trial court, as the gate-keeper, must determine that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert, 509 U.S. at 589-91 (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). The trial court must also "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. Ltd. v. Carmichel, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The Eleventh Circuit has synthesized the existing rules into a three-part inquiry, instructing courts to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998), reh'g and reh'g en banc denied, 172 F.3d 884 (1999).

4

AO 72A
(Rev.8/82)

With respect to the reliability of expert testimony, relevant factors include "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Id. at 1262 (quoting Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003)). "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." Id. It is important to note that "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible." U.S. v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005).

### B.  Qualifications

Plaintiffs contend that Mr. Cottles is an expert in tire failure analysis and tire design and manufacturing. (Response to Motion to Exclude at 3). Mr. Cottles was employed in the tire industry by a tire manufacturer for 17 years. (Affidavit of Mr. Cottles, Ex. 1 to Response to Motion to Exclude, Dkt. No. [96-2] at 1). During that time he was involved in designing, manufacturing, and testing steel belted radial tires, as described in detail in his affidavit. (Id. at 1-

5

6). By the time Mr. Cottles left the tire industry he had attained the position of Technical Director of Tire Development for Goodyear-Dunlop Tires N.A. Ltd. ("Dunlop") (Id. at 2). The Court finds that Mr. Cottles has had extensive experience in examining tires and also in designing tires to meet various safety, performance, and cost requirements established by Dunlop, and is therefore qualified to testify as to the use of a nylon cap ply in the design of a tire and the presence and cause of "rubber reversion" in a tire.

Defendants challenge Mr. Cottles lack of competence to testify as to "rubber reversion," because the issue is largely one of rubber chemistry and Mr. Cottles is not a chemist. (Brief for Motion to Exclude at 19). However, Defendants have failed to demonstrate that a background in chemistry is necessary to qualify Mr. Cottles to testify as to "rubber reversion," particularly in light of his experience in the development of tire components. See Morris v. Goodyear Tire and Rubber Co., 2004 WL 5522851, No. Civ.-03-655-C, at *13 (W.D. Okla. Dec. 17, 2004) (rejecting argument that expert needed to have a background in chemistry to discuss the rubber components of a tire in light of his experience developing tires).

C. Methodology

Mr. Cottles summarizes his methodology as including:

6

> 1) detailed physical examination of the tire; 2) x-rays
> of the tire to inspect its internal structure; 3) a review
> of tire company documents produced in the case,
> including any tire specification, and finally 4)
> consideration of my experience and training as well as
> secondary sources and literature made part of my
> expert report to arrive at specific conclusions.

(Affidavit of Mr. Cottles at 6). His methodology–primarily visual, tactile, and diagnostic–appears to be similar to that employed by Defendants' expert witness, Joseph Grant, in examining a tire for defects. (See Expert Report of Joseph Grant, Ex. B to Defendants' Disclosure of Expert Testimony, Dkt. No. [57] at 3-7). Additionally, his methodology, while not as comprehensive, is similar to that used by the National Highway Traffic Safety Administration (NHTSA) in an investigation of tire defects. (See NHTSA Firestone Report, Ex. B to Affidavit of Mr. Cottles, Dkt. No. [96-4], at 1-2). While neither fact is dispositive, it does support the reliability of Mr. Cottles' proffered expert testimony by demonstrating that he "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S . at 152.

Defendants argue that Mr. Cottles presents no objective standard as to when a tire should include a cap ply to increase its reliability or safety, yet he advocates for the inclusion of cap plies in all tires. (Brief for Motion to

7

Exclude at 13). However, Mr. Cottles' expert report states:

> While nylon cap plies *may not be required* to ensure durability in a properly manufactured and designed tire, *it is clear that the subject tire would have benefited by the use of a nylon cap ply.*
> ...
> Nylon cap plies are a design element that is known to both decrease the risk and increase the utility of steel belted radial tires. Nylon continues to represent a technology and material which was readily available, feasible, and known by Michelin. *Given the other itemized weaknesses*, the lack of nylon cap plies in this tire is a design defect.

(Expert Report at 32 (emphasis added)). Therefore, Mr. Cottles does not conclude that a cap ply is a necessary element in every tire, but rather is an element that can increase tire durability. He concedes that many if not most tires are manufactured without cap plies. In addition to knowledge gained from his experience examining, testing, and designing tires, Mr. Cottles attaches to his affidavit [96-2] numerous patent applications that suggest that cap plies improve the integrity and durability of a tire. (See Ex. F to Affidavit of Mr. Cottles, Dkt. No. [96-8]). His testimony that cap plies increase the durability of tires, while primarily based on his experience, is sufficiently reliable to present to the jury and will aid them in resolving this dispute.

Defendants also challenge Mr. Cottles' methodology for identifying

8

"rubber reversion." (Brief for Motion to Exclude at 20-22). Mr. Cottles purports to be able to identify areas of "rubber reversion" through a visual and tactile examination of a tire, stating: "Oxidized rubber components are more brittle and harder when touched . . . . Rubber components that have not been attached and weakened by oxidative degradation look and feel different from oxidized rubber components." (Affidavit of Mr. Cottles at 16). The Court is satisfied that based upon Mr. Cottles experience examining tires, he is able to identify what he refers to as "rubber reversion." Additionally, it is not "rubber reversion" that Mr. Cottles claims is a defect in the tire, but rather "rubber reversion" is indicative of oxidative degradation resulting from a lack of adequate antioxidant remaining in the skim stock or in the original compounding of the rubber. (Expert Report at 31). Mr. Cottles cites to a publication entitled, "Long Term Durability of Tires," which cautions that care must be taken in selecting rubber formulas to avoid antioxidant depletion. (Id.). The Court is satisfied that Mr. Cottles' theory as to the presence of oxidative degradation as evidenced by "rubber reversion" is sufficiently reliable and will aid the jury in its fact finding mission.

The Court does not find, as Defendants argue, that Mr. Cottles conclusions present a poor "analytical fit" in comparison to his methodology.

9

(See Defendants' Reply Brief to Motion to Exclude, Dkt. No. [103] at 2-3). Mr. Cottles has satisfied the Daubert threshold to offer expert testimony as to the use and impact of nylon cap plies in tire design as well as the presence and causes of "rubber reversion." His application of specialized and technical knowledge to the facts of this case will assist the jury in rendering a decision. Defendants will have ample opportunity to question Mr. Cottles conclusions and analysis in cross examination and through a rebuttal expert. Defendants' Motion to Exclude [74] is **DENIED**.

**II.     Defendants' Motion for Partial Summary Judgment [75]**

Defendants move for summary judgment on the following issues: (1) all claims against Michelin Corporation, the holding company and parent of MNA; (2) Plaintiffs' pain and suffering claim; (3) Plaintiffs' claim for punitive damages; (4) Plaintiffs' claim that Defendants failed to warn consumers regarding hazards and/or dangers of tire aging; and (5) Plaintiffs' claim that the subject tire was defective due to rubber reversion and lack of a cap ply. (Defendants' Brief in Support of Motion for Partial Summary Judgment ("Summary Judgment Brief") Dkt. No. [75-2] at 2-3).

Plaintiffs' Response [97] only asserts that Defendants are not entitled to summary judgment on two of the five areas in issue: (1) Plaintiffs' pain and

10

suffering claim; and (2) Plaintiffs' claim that the subject tire was defective due to rubber reversion and lack of a cap ply. (Plaintiff's Response at 1). Since Plaintiffs have not opposed Defendants' Motion for Partial Summary Judgment as to their claims against Michelin Corporation, their claim for punitive damages, and their claim for failure to warn of tire aging, Defendants' Motion for Partial Summary Judgment is **GRANTED** as to those claims.[2] Defendants' claim for partial summary judgment in regards to Plaintiffs' theories concerning rubber reversion and lack of a cap ply is premised on the exclusion of Mr. Cottles's expert testimony concerning those matters. Since the Court has denied Defendants' Motion to Exclude [74], its Motion for Partial Summary Judgment as to this matter is **DENIED**. The only area of contention remaining is Plaintiffs' claim for pain and suffering.

A.  Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] Not only do Plaintiffs not address these three areas in their response, they concede the issues, stating only that "the Court should deny Michelin's Motion for Partial Summary Judgment *on the claims Plaintiffs opposed*." (Plaintiffs' Response at 6 (emphasis added)).

11

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

12

evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

With these standards as a foundation, the Court turns to address the merits of the Defendants' motion for partial summary judgment.

B. Plaintiffs' Claim for Pain and Suffering

Defendant argues that Terrell Stalling died instantaneously and therefore is not entitled to recover for pain and suffering. (Summary Judgment Brief at 10-11). Defendants maintain that in order for a plaintiff "to recover for the pre-

13

impact pain and suffering of a decedent killed in an automobile collision, there must be some evidence that the decedent was conscious of their impending death," and there is no such evidence in this case. (Id. at 11, citing Dept. of Transp. v. Dupree, 256 Ga. App. 668, 680, 570 S.E. 2d 1, 11 (2002)). However, the court in Dupree cited to Monk v. Dial, 212 Ga. App. 362, 441 S.E 2d 857 (1994), for the proposition that "the jury may infer such consciousness from evidence immediately prior to impact or following injury." Dupree, 256 Ga. App at 680, 270 S.E. 2d at 11.

In rejecting a similar argument to that presented by Defendants in this case, the court in Monk noted that,

> from evidence that the decedent's vehicle veered shortly before the collision, the jury could infer that decedent was aware of the impending crash, and from these circumstances could extrapolate the probable mental state of decedent in that last moment of consciousness. The fright, shock, and mental suffering experienced by an individual due to wrongful acts of negligence will authorize a recovery where attended with physical injury.

212 Ga. App. At 362, 441 S.E. 2d at 859. In Monk, "[t]he decedent's pickup truck was traveling at great speed when it collided with the tractor-trailer and there was no movement or sign of life after the collision," yet evidence that the vehicle veered shortly before that collision was sufficient to support the jury's

14

award of pain and suffering.  212 Ga. App. at 362; 442 S.E. 2d at 857.

Defendants' argue that Monk is not on point because Plaintiff Woods did not know whether Mr. Stallings took evasive action.  (Defendants' Reply to Summary Judgment Motion, Dkt. No. [102] at 3-4).  Plaintiff Woods's deposition testimony in relevant part states:

> Q: Did you turn your head or your body toward the sound?
> A: I turned my head towards him and said, "I think you're having a blowout," just like that.
> Q: And did he turn toward you, did he acknowledge that he heard you?
> A. By this time we started veering.  Shortly after we just started going to the left.
> ...
> Q: And you remark to Mr. Stallings, and you turn toward him, but you're not sure if he responded to you?
> A: No.  He may have looked at me, but I can't remember what he said.
> Q: And the next thing you remember is what?
> A: He tried to gain control of the vehicle, and he hit his brakes, and then we spun around.  And I said, "Terrell."  He never said anything, and then at that point the vehicle just took a mind of its own and started flipping on my side.
> ...
> Q: The he attempted to control the vehicle?
> A: Yes.
> Q: And do you recall whether he turned back towards the roadway, that would be towards the right?
> A: I don't recall, but I just know we spun around, so I
> Q: I'm sorry.

15

> A: I assume that's what he did.
> Q: When you say he attempted to control the vehicle, what do you recall seeing that leads you to believe that?
> A: He put on his brakes -- oh, he did that. Maybe he did do that, I don't know. He hit the brakes, and then that's when we just did one of those and spun around. I'm sorry, we spun around.
> ...
> Q: He never -- from the time you guys were having your conversation about what was in the magazine and you didn't want to hear what he had to say, he never said anything else to you thereafter?
> A: No, because after I said, "I think you're having a blowout," and at this point we started veering to the left, and he hit his brakes, and that was it. That was the last thing I said to him, and he never said anything. Even when we spun around and I said, "Terrell," he never said anything.
> ...
> Q: When you spun around, do you recall if you spun towards Mr. Stallings' side of if you were spinning towards your side? And we're not talking about flipping, I'm talking about when you say you spun around and you ended up sort of facing traffic.
> A: I don't remember. I just know when he tried to get us away from that I -- I don't remember. I don't remember. I don't recall.

(Woods Depo., Ex. A to Defendants' Reply Brief, Dkt. No. [102-2] at 61-68).

Viewing Plaintiff Woods's testimony in the light most favorable to the Plaintiffs, there exists a genuine issue of material fact as to whether Mr. Stallings was conscious and aware of the impending crash before his death.

16

Defendants' Motion is **DENIED** in regards to Plaintiffs' claim for pain and suffering.

### III. **Defendants' Motion for Oral Argument [80]**

Defendants requested that the Court hear oral argument on their Motion to Exclude [74] and Motion for Partial Summary Judgment [75]. In light of the Court's resolution of both motions in Section I and II above, Defendants' Motion for Oral Argument is **DENIED as moot**.

### IV. **Defendants' Motion to Compel Study [89]**

Defendants move the Court for an Order compelling Plaintiffs and Mr. Cottles to produce all material and data related to a tire study conducted by Mr. Cottles known as a "compression grooving" study. (Defendants' Motion to Compel Study, Dkt. No. [89] at 1). Plaintiffs have failed to file a response to Defendants' motion and therefore the motion is deemed unopposed. See L.R. 7.1(B) N.D. Ga. ("Failure to file a response shall indicate that there is no opposition to the motion."). Defendants' Motion to Compel Study [89] is **GRANTED**. Plaintiffs and Mr. Cottles are **ORDERED** to produce all materials and data requested by Michelin relating to the "compression grooving" study, including but not limited to the following:

- the 24 involved tires;

17

- all photographs or other images of the 24 tires or their testing;

- all the laser profiles and other measurements;

- all the data relating to the study, including the 24 tire data sheets in unredacted form and inspections notes; and

- all correspondence, contracts, and other agreements associated with the conducting of the study or Mr. Cottles's possession and use of the study.

The Court also authorizes a supplemental deposition of Mr. Cottles on the limited subject of the compression grooving study and the additional materials produced.

### III.  Defendants' Motion to Compel Documents [91]

Defendants move the Court for an order compelling Plaintiff Dontarie M. Stallings to produce a number of documents. Defendants represent that Dontarie Stallings has not lodged any objection to the requested documents and that he agreed to produce them. (Brief in Support of Defendants' Motion to Compel Documents, Dkt. No. [91-2] at 5). Furthermore, there is no opposition to Defendants' request, as Plaintiffs have not responded to the motion. Defendants Motion to Compel Documents [91] is **GRANTED**. Plaintiff Dontarie M. Stallings is **ORDERED** to produce Terrell Stallings's driver's license, military identification card, divorce decree, and probate court file, as well as programs from his funeral services, documents of benefits received as a

18

result of his death, and a written release for his medical records in the possession of the Atlanta Veterans Association Medical Center.

## Conclusion

For the aforementioned reasons, Defendants' Motion to Exclude Opinions of Mr. Troy Cottles [74] is **DENIED**, Defendants' Motion for Partial Summary Judgment [75] is **GRANTED, in part, and DENIED, in part**, Defendants' Motion for Oral Argument [80] is **DENIED as moot**, Defendants' Motion to Compel Discovery Relating to Mr. Troy Cottles's "Compression Grooving Study" [89] ("Motion to Compel Study") is **GRANTED**, and Defendants' Motion to Compel Documents [91] is **GRANTED**.

**SO ORDERED**, this  12th  day of March, 2010.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)